**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| GRAPHON CORPORATION, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2-05-CV-530 (TJW) |
| | § | |
| AUTOTRADER.COM, INC. | § | |
| Defendant. | § | |
| | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

After considering the submissions and the arguments of counsel, the court issues the following order concerning the claim construction issues:

**I.      Introduction.**

Plaintiff Graphon Corporation ("Graphon") accuses Autotrader.com, Inc. ("Autotrader") of infringing United States Patent Nos. 6,324,538 ("the '538 patent") entitled "Automated On-line Information Service and Directory, Particularly for the World Wide Web" and 6,850,940 ("the '940 patent") also entitled "Automated On-line Information Service and Directory, Particularly for the World Wide Web."  This opinion resolves the parties' various claim construction disputes.

**II.     Background of the Technology**

The '538 and the '940 patents originate from the same specification.  The patents disclose an on-line information system including a database in which the user controls both the content of the information in the database and the manner in which that information is classified.  The system receives user requests to publish electronic user information and also accepts information from users.  Database entries are accessible on a computer network.  The system protects the database entries by requiring a user to provide a correct password to create or modify an entry in the database.  Bearing

this background in mind, the court now addresses the claim construction issues.

## III.   General Principles Governing Claim Construction

"A claim in a patent provides the metes and bounds of the right which the patent confers on the patentee to exclude others from making, using or selling the protected invention." *Burke, Inc. v. Bruno Indep. Living Aids, Inc.*, 183 F.3d 1334, 1340 (Fed. Cir. 1999). Claim construction is an issue of law for the court to decide. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).

To ascertain the meaning of claims, the court looks to three primary sources: the claims, the specification, and the prosecution history. *Markman*, 52 F.3d at 979. Under the patent law, the specification must contain a written description of the invention that enables one of ordinary skill in the art to make and use the invention. A patent's claims must be read in view of the specification, of which they are a part. *Id.* For claim construction purposes, the description may act as a sort of dictionary, which explains the invention and may define terms used in the claims. *Id.* "One purpose for examining the specification is to determine if the patentee has limited the scope of the claims." *Watts v. XL Sys., Inc.*, 232 F.3d 877, 882 (Fed. Cir. 2000).

Nonetheless, it is the function of the claims, not the specification, to set forth the limits of the patentee's claims. Otherwise, there would be no need for claims. *SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) (en banc). The patentee is free to be his own lexicographer, but any special definition given to a word must be clearly set forth in the specification. *Intellicall, Inc. v. Phonometrics*, 952 F.2d 1384, 1388 (Fed. Cir. 1992). And, although the specification may indicate that certain embodiments are preferred, particular embodiments appearing in the specification will not be read into the claims when the claim language is broader

2

than the embodiments.  *Electro Med. Sys., S.A. v. Cooper Life Sciences, Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994).

This court's claim construction decision must be informed by the Federal Circuit's decision in *Phillips v. AWH Corporation*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc).  In *Phillips*, the court set forth several guideposts that courts should follow when construing claims.  In particular, the court reiterated that "the *claims* of a patent define the invention to which the patentee is entitled the right to exclude."  415 F.3d at 1312 (emphasis added) (*quoting Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)).  To that end, the words used in a claim are generally given their ordinary and customary meaning.  *Id*.  The ordinary and customary meaning of a claim term "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application."  *Id*. at 1313.  This principle of patent law flows naturally from the recognition that inventors are usually persons who are skilled in the field of the invention.  The patent is addressed to and intended to be read by others skilled in the particular art.  *Id*.

The primacy of claim terms notwithstanding, *Phillips* made clear that "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id*.  Although the claims themselves may provide guidance as to the meaning of particular terms, those terms are part of "a fully integrated written instrument."  *Id*. at 1315 (*quoting Markman*, 52 F.3d at 978).  Thus, the *Phillips* court emphasized the specification as being the primary basis for construing the claims.  *Id*. at 1314-17.  As the Supreme Court stated long ago, "in case of doubt or ambiguity it is proper in all cases to refer back to the descriptive portions of the specification to aid

3

in solving the doubt or in ascertaining the true intent and meaning of the language employed in the claims." *Bates v. Coe*, 98 U.S. 31, 38 (1878).  In addressing the role of the specification, the *Phillips* court quoted with approval its earlier observations from *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998):

> Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim.  The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.

Consequently, *Phillips* emphasized the important role the specification plays in the claim construction process.

The prosecution history also continues to play an important role in claim interpretation.  The prosecution history helps to demonstrate how the inventor and the PTO understood the patent. *Phillips*, 415 F.3d at 1317.  Because the file history, however, "represents an ongoing negotiation between the PTO and the applicant," it may lack the clarity of the specification and thus be less useful in claim construction proceedings.  *Id*.  Nevertheless, the prosecution history is intrinsic evidence.  That evidence is relevant to the determination of how the inventor understood the invention and whether the inventor limited the invention during prosecution by narrowing the scope of the claims.

*Phillips* rejected any claim construction approach that sacrificed the intrinsic record in favor of extrinsic evidence, such as dictionary definitions or expert testimony.  The *en banc* court condemned the suggestion made by *Texas Digital Systems, Inc. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002), that a court should discern the ordinary meaning of the claim terms (through dictionaries or otherwise) before resorting to the specification for certain limited purposes.  *Id*. at

4

1319-24.   The approach suggested by *Texas Digital*–the assignment of a limited role to the specification–was rejected as inconsistent with decisions holding the specification to be the best guide to the meaning of a disputed term.  *Id*. at 1320-21.   According to *Phillips*, reliance on dictionary definitions at the expense of the specification had the effect of "focus[ing] the inquiry on the abstract meaning of words rather than on the meaning of the claim terms within the context of the patent."  *Id*. at 1321.  *Phillips* emphasized that the patent system is based on the proposition that the claims cover only the invented subject matter.  *Id.*  What is described in the claims flows from the statutory requirement imposed on the patentee to describe and particularly claim what he or she has invented.  *Id*.  The definitions found in dictionaries, however, often flow from the editors' objective of assembling all of the possible definitions for a word.  *Id*. at 1321-22.

*Phillips* does not preclude all uses of dictionaries in claim construction proceedings.  Instead, the court assigned dictionaries a role subordinate to the intrinsic record.  In doing so, the court emphasized that claim construction issues are not resolved by any magic formula.  The court did not impose any particular sequence of steps for a court to follow when it considers disputed claim language.  *Id*. at 1323-25.  Rather, *Phillips* held that a court must attach the appropriate weight to the intrinsic sources offered in support of a proposed claim construction, bearing in mind the general rule that the claims measure the scope of the patent grant.  The court now turns to a discussion of the disputed claim terms.

The '538 and the '940 Patents include claim limitations that fall within the scope of 35 U.S.C. § 112 ¶ 6.  Section 112 ¶ 6 states "[a]n element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure. . . in support thereof, and such claim shall be construed to cover the corresponding structure . . .

5

described in the specification and equivalents thereof." 35 U.S.C. § 112 ¶ 6 (2007). The first step in construing a means-plus-function limitation is to identify the recited function. *See Micro Chem., Inc. v. Great Plains chem. Co.*, 194 F.3d 1250 1258 (Fed. Cir. 1999). Then, the court must identify in the specification the structure corresponding to the recited function. *Id.* The "structure disclosed in the specification is 'corresponding' structure only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim." *Medical Instrumentation and Diagnostics, Corp. v. Elekta AB,* 344 F.3d 1205, 1210 (Fed. Cir. 2003)(*citing B. Braun v. Abbott Labs,* 124 F.3d 1419, 1424 (Fed. Cir. 1997)).

The patentee must clearly link or associate structure with the claimed function as part of the *quid pro quo* for allowing the patentee to express the claim in terms of function pursuant to § 112 ¶ 6. *See id.* at 1211; *see also Budde v. Harley-Davidson, Inc.* 250 F.3d 1369, 1377 (Fed. Cir. 2001). The "price that must be paid" for use of means-plus-function claim language is the limitation of the claim to the means specified in the written description and equivalents thereof. *See O.I. Corp. v. Tekmar Co.,* 115 F.3d 1576, 1583 (Fed. Cir. 1997).

If a patent purports to use software as the structure to perform the claimed function, a failure to associate that software with the recited function constitutes a failure to particularly point out and claim that particular structure as a means of performing the function. *See Medical Instrumentation and Diagnostics Corp.,* 344 F.3d at 1211. Further, it is "important to determine whether one of skill in the art would understand the specification itself to disclose the structure, not simply whether that person would be capable of implementing the structure. *See Atmel Corp. v. Info. Storage Devices, Inc.,* 198 F.3d 1374, 1382 (Fed. Cir. 1999). Fundamentally, it is improper to look to the knowledge of one skilled in the art separate and apart from the disclosure of the patent. *See Medical*

6

*Instrumentation and Diagnostics Corp.,* 344 F.3d at 1211.

**IV.    Terms in Dispute**

     **A.    '538 Patent**

       **1.  "creating a database entry containing information received from a user"**
**(claim 1)**

The plaintiff argues that this term means "that an entry in a database is created containing information submitted by a user over a computer network."  Defendant argues that the term means "creating a database entry containing information received from a user in which the content is entirely user controlled."  The disagreement between the parties is whether the claim requires that the user control the content of the information contained in a database entry.

The defendant cites to portions of the specification that expressly require the user to control the content and the classification of the information content of a database entry. *See, e.g.,* 1:13-3:40; 10:34-42.  Plaintiff's arguments ignore the plain language in the specification concerning the user's control over the content and classification of the information contained in a database entry.  For example, the specification states that the "information content is entirely user-controlled" and that "the user controls both the content of an entry and the manner in which it is classified."  2:60-64; 3:22-28.

The court agrees with the defendant that the user controls the content of the information contained in the database.  Consequently, the court construes the phrase to mean "creating a database entry containing information received from a user in which the user entirely controls the information content of a database entry and the manner in which the information is classified."

      **2.    "computer network" (claims 1 & 7) and "network" (claim 4)**

The plaintiff proposes that "computer network" and "network" mean "a public computer network, such as the Internet, comprised of two or more computers interconnected by communication channels." The defendant proposes that "computer network" and "network" mean "the World Wide Web." The parties disagree about the breadth of the network. Defendant argues that the terms should be construed solely to the World Wide Web, which is described in the preferred embodiment.

Defendant argues that its proposed claim construction is proper largely based on the preferred embodiment described in the written description. Plaintiff does not dispute that the World Wide Web fits within the claimed invention, but argues that the breadth of the terms "computer network" or "network" includes public networks other than the World Wide Web. The court is persuaded that Plaintiff is correct. The written description states that the server site is connected to a computer network "such as the 'Web or a Wide Area Network (WAN) other than the Web.'" 3:65-67. Accordingly, the court construes these terms to mean "any public computer network comprised of two or more computers interconnected by communication channels."

### 3.     "creating a database entry containing the information submitted via the entry form" (claim 4)

This term necessarily incorporates the court's first two claim constructions. Plaintiff argues that this term means "that an entry in a database is created containing information submitted by a user via an entry form displayed to the user over a computer network." Defendant argues that the term should be construed to mean "creating a database entry containing information in an entry form submitted by the user over the World Wide Web in which the content is entirely user-controlled." Again, the parties' disputes relate to the breadth of the network and the user's control over the

information content.  For the reasons outlined above, the court construes this term  to mean "creating a database entry containing information submitted by a user via an entry form displayed to the user over a public computer network wherein the information content and classification is entirely controlled by the user."

    **4. "creating a database entry containing information accepted from a user "**
**(claim 7)**

   This term also incorporates the court's first two claim constructions.  Plaintiff argues that the term means "an entry in a database is created containing information submitted by a user over a computer network."   Defendant argues that the term should be construed to mean "creating a database entry containing information accepted from a user in which the content is entirely user-controlled."  For the reasons previously addressed, the court construes this term to mean "creating a database entry containing information accepted from a user over a  public computer network wherein the information content and classification is entirely controlled by the user."

    **5. "data representing text, a universal resource locator, an image, and a**
     **user-selected category"**

   The plaintiff argues that this term means that "the information submitted to the database by the user communicating over a computer network includes text, a universal resource locator, an image, and a user-selected category."  The defendant argues that the term  means  "data representing (I) text, (ii) the Web address of a document or other resource, (iii) an image, and (iv) a category capable of being selected and defined without limitation by the user.  The parties' disagreement with respect to this term concerns the universal resource locator ("URL").  Defendant argues that the URL should be limited to a Web address.  Plaintiff proposes that a universal resource locator is a unique

address for a file that is accessible on the internet.

This dispute focuses on the breadth of the computer network.  Defendant argues that URL should be limited to a Web address.  This limitation would necessarily limit the computer network to the World Wide Web, which requires importing a limitation from the preferred embodiment to the claims.  The written description, however, states that the term "computer network" is broader than the World Wide Web.  *See* 3:65-67.  Consequently, the court construes the term to mean "data representing text, a universal resource locator, an image, and a user-selected category."

6.    **"generating a transaction ID corresponding to the database entry" (claims 1 & 4) and "generating a unique transaction ID corresponding to the database entry" (claim 7)**

The plaintiff defines these terms to mean "that a unique identifier is generated which corresponds to the database entry allowing the user to create, access, or update an entry."  The defendant's proposed construction is "generating a unique identifier of an entry."  The defendant further proposes that the "generating a transaction ID" step of the method occurs before the "creating a database entry" step.  Both parties try to import limitations from the written description to the claims.  Plaintiff suggests that the court should construe the claim to include functional limitations that are simply not supported by the record.  The record makes it clear that a unique transaction ID is generated when the user adds a new entry to the database and that ID is effective for the life of the entry. *See, e.g.,* 9:30-46.  Plaintiff asks the court to construe the term to limit the purposes for which the transaction ID may be used.  That limitation is not supported by the record.

Similarly, the defendant asks the court to add a limitation that is not supported in the record.  Specifically, the defendant asks the court to construe this term so that the "generating a transaction ID" step occurs before the "creating a database entry" step.  The intrinsic record cited by the

defendant in support of its position, however, does not support this limitation.  Indeed, there is no support in the record for importing this limitation into the claim language.  In fact, the patent provides that "[w]hen the user chooses to add a new entry to the database, a unique transaction ID is created for that entry. . ." *Id.*  The court construes "generating a transaction ID corresponding to the database entry" to mean "generating a unique identifier for a particular database entry" and rejects Defendant's proposed limitation that the "generating a transaction ID" step of the method occurs before the "creating a database entry" step.

**7.      "password protecting the entries" (claim 1) and "password protecting the entry" (claims 4 & 7)**

The plaintiff contends that this term  means "that the database entry or entries are protected by a word, string of characters and/or numbers which must be supplied before a user can create, access, or update an entry."  The defendant proposes that the term should be construed to mean "restricting access to the data by means of a password."   Plaintiff's proposed construction asks the court to import a variety of limitations from the specification to the claim language.  Specifically, Plaintiff asks the court to limit "password protecting" the entry or entries such that a password is required to access, update, or create a database entry.  But the patent states that users are asked to choose a password and that the password "may be required to access some system services."  7:60-67.

The claims make it clear that the password must be used to "protect" the database entries. The court is persuaded that Defendant's proposed claim construction "restricting access to the data by means of a password" is consistent with the plain meaning of "protecting" without importing additional unsupported limitations from the specification.  Accordingly, the court construes this term

11

to mean "restricting access to the data by means of a password."

### 8. "publishing information" (preamble of claims 4 & 7)

Plaintiff proposes that this term should be construed to mean "making information available over the computer network," and the defendant argues that no construction is necessary as the term is part of a non-limiting preamble.  The court agrees with defendant's position and declines to construe this term.

### 9. "displaying search results in hyper text markup language as a sequence of universal resource locators directed to the database entries" (claims 5 & 7)

Plaintiff argues that this term means "that when a search is performed, the search results include universal resource locators 'URLs' that point to entries in the database. 'Hyper text markup language' is a computer language used to specify the contents and format of a hypermedia document."  Defendant proposes the following construction "displaying web search results in an HTML format that embeds the Web addresses linked to database entries."

Defendant's proposed construction functionally limits the computer network to the World Wide Web.  The defendant's construction essentially construes an URL to mean a Web address.  As discussed previously, the court does not limit the computer network in the claims of the '538 patent to the World Wide Web and does not require an URL to mean a Web address.  The patent specification expressly states that the computer network in the claims is broader than the World Wide Web.  3:65-67.  Consequently, the URL must be broader than a web address because the network is broader than the World Wide Web.

The court believes that it is not necessary to construe "hyper text markup language" because

one of ordinary skill in the art knows what HTML means.  Accordingly, the court construes "displaying search results in hyper text markup language as a sequence of universal resource locators directed to the database entries" to mean "displaying search results in hypertext markup language where the results are displayed as a sequence of universal resource locators directed to the database entries."

> **10.**     **"in response to a user selecting one of the entries' universal resource locator" (claims 5 & 7)**

Plaintiff argues that this term  means "that information is presented to the user after the user selects one of the search results displayed as a result of the search."  Defendant proposes that the term should be construed to mean "in response to a user selecting one of the embedded web addresses."  This is another instance in which the defendant asks the court to limit the computer network to the World Wide Web by requiring an URL to be limited to a Web address.  That argument previously was rejected.

The construction proposed by the plaintiff is consistent with the record.  The court construes "in response to a user selecting one of the entries' universal resource locator" to mean that information is presented to the user after the user selects one of the search results displayed as a result of the search."

> **11.**     **"displaying search results in hyper text markup language as a sequence of universal resource locators directed to the database entries" (claims 5 & 7)**

Plaintiff argues that this term means "that when a search is performed, the search results include universal resource locators 'URLs' that point to entries in the database.  'Hyper text markup

language' is a computer language used to specify the contents and format of a hypermedia document."  Defendant proposes the following construction "displaying web search results in an HTML format that embeds the Web addresses linked to database entries."

Defendant's proposed construction functionally limits the computer network to the World Wide Web.  The defendant's construction also requires an URL to mean a Web address.  As discussed previously, the court does not limit the computer network in the claims of the '538 patent to the World Wide Web and does not construe an URL to mean a Web address.  The court construes this term to mean "in response to the user selecting one of the URL's associated with the search results."

### B.  '940 Patent

Claims 15-21 in the '940 patent are means-plus-function claims.  Claim 15 is an independent claim and claims 16-21 are depend from claim 15.

When a claim limitation uses the term "means" to describe a limitation, there is a presumption that the inventor uses the term to invoke § 112 ¶ 6.  *See Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1367, 1375 (Fed. Cir. 2003).  This presumption may be rebutted when the limitation recites structure sufficient to perform the claimed function in its entirety.  *See id.*

After concluding that a claim limitation is a means-plus-function limitation, the court must first identify the function of the limitation and then look to the specification to identify the corresponding structure for that function.  *See Medical Instrumentation*, 344 F.3d at 1210.  If there is no structure in the specification corresponding to the means-plus-function limitation in the claims, the claim will be found invalid as indefinite.  *See Atmel*, 198 F.3d at 1378-79.  To link structure to the claimed function, the structure must be disclosed in the written description in a manner such that

14

one of ordinary skill in the art would be able to identify the structure that corresponds to the means limitation.  *See id.* at 1382.  "Otherwise, one does not know what the claim means."  *Id.*

### 1.  "means for generating said record with said information" (claim 15)

The parties agree that this limitation is a means-plus-function claim limitation.  Plaintiff argues that the recited function is "generating said record with said information" and the defendant argues that it is "generating a record from the user-supplied information."  The court agrees with the plaintiff that the recited function is "generating said record with said information."

The next step in this analysis is to determine the structure disclosed in the written description corresponding to the recited function. Plaintiff argues that the corresponding structure is "server software such as HTML, front-ending tools communicating through the Common Gateway Interface to a database, to an SQL or miniSQL database for performing the recited function, and equivalents thereof."  Defendant argues that the written description discloses no structure corresponding to the recited function and argues that "said information has no antecedent basis."

Plaintiff cites to the following passages in the '940 patent: 1:25-62; 3:4-11; 4:1-48; 7:44-47; and figs 1A, 1B, 3, 4, and 5 to support its position.    The court concludes that the sections of the specification cited by Plaintiff do not link the recited function to any structure.  The court has reviewed the entire patent specification and determined that no structure is linked to the recited function.

The corresponding structure of a means-plus-function limitation must be disclosed in the written description in such a manner that one skilled in the art will know and understand what structure corresponds to the means limitation. *See Atmel Corp. v. Info Storage Devices, Inc.* 198 f.3d 1374, 1382 (Fed. Cir. 1999).   A proper indefiniteness analysis requires description of the structure

in the specification and then asking whether one of ordinary skill in the art would identify the structure from the description. *See id.* at 1381. Title 35 U.S.C. § 112 ¶ 6 requires the patentee to disclose some structure. "There must be some structure in the specification" and the requirements of § 112 ¶ 6 will not be met when there is "total omission of structure." *Atmel*, 198 F.3d at 1382. In this instance, because the written description discloses no structure clearly linked to the recited function, the court finds that this limitation is indefinite.[1] The court declines to address Defendant's argument concerning the lack of an antecedent basis for "said information" in the claim because it is moot.

### 2.   "means for storing said record in said network accessible database" (claim 15)

The parties agree that this limitation is a means-plus-function claim limitation. Plaintiff argues that the recited function is "generating said record in said network accessible database" while the defendant argues that it is "generating a record in the Web accessible database." The court agrees with the plaintiff that the recited function is "generating said record in said network accessible database" because the court (as discussed below) must construe "network" more broadly than the World Wide Web.

The next step in this analysis is to determine the structure disclosed in the written specification corresponding to the recited function. Plaintiff argues that the corresponding structure is "server software such as HTML, front-ending tools communicating through the Common Gateway Interface to a database, to an SQL or miniSQL database for performing the recited function, and equivalents thereof." Defendant argues that the written description discloses no structure

---

[1]For the purpose of review, the court will construe similar limitations. However, based on the court's conclusion that this limitation is indefinite, claim15 and all claims depending from claim 15 are invalid.

corresponding to the recited function and argues that "said information has no antecedent basis."

Plaintiff cites to cols. 1:25-62; 3:4-11; 4:1-48; 7:44-47; and figs 1A, 1B, 3, 4, and 5 to support its position.   The court concludes that the sections of the specification cited by Plaintiff do not link the recited function to any structure.   Additionally, the court reviewed the entire specification to find structure linked to the recited function.   The specification does not link any structure to the recited function.   Accordingly, the court finds that this limitation is indefinite.   The court declines to address Defendant's argument concerning the lack of an antecedent basis for "said information" in the claim because it is moot.

**3.   "means for storing an identification of said user indicating that said user is authorized to modify said record in said network accessible database" (claim 15)**

The parties agree that this limitation is a means-plus-function claim limitation.   Plaintiff argues that the recited function is "storing said record in said network accessible database" while the defendant argues that it is "storing the record in a Web accessible database."   The court agrees with the plaintiff that the recited function is "storing said record in said network accessible database" because the court has construed "network" more broadly than the World Wide Web.

The next step in this analysis is to determine the structure disclosed in the specification corresponding to the recited function.   Plaintiff argues that the corresponding structure is "server software such as HTML  front-ending tools communicating through the Common Gateway Interface to a database, to an SQL or miniSQL database for performing the recited function, and equivalents thereof."   Defendant argues that the written description discloses no structure corresponding to the recited function.

Plaintiff cites to cols. 1:25-62; 3:4-11; 4:1-48; and figs 1A, 1B, 3, 4, and 5 to support its

position.   The court concludes that the sections of the specification cited by Plaintiff do not link the recited function to any structure.  Once again, the court has reviewed the entire specification to find structure linked to the recited function.  The specification does not link any structure to the recited function.  Accordingly, the court finds that this limitation is indefinite.

The court has determined that the three means-plus-function limitations specifically addressed in this order are indefinite.  Consequently, claim 15 and all dependent claims depending from claim 15 are indefinite.  Further consideration of means-plus-function claim limitations for the '940 patent is unnecessary.

### 1.  "network" (claims 1, 5, 6, 15, 19, 20)[2]

In light of the court's prior holding, "network" is construed to mean "a public  network comprised of two or more computers interconnected by communication channels."

### 2.  "user authorization information" (claims 1 & 15)

Plaintiff proposes that this  "user authorization information" should be construed to mean "a password or user ID used to authenticate a user."  Defendant argues that the term should mean "any user information upon which access is determined."

Plaintiff's proposed claim construction is not supported by the record.  Plaintiff asks the court to limit "user authorization information" to a password or a user ID used to authenticate the user, but does not provide any support for substantially limiting this term.  Unlike the '538 patent in which password protection was a limitation expressed in the claims themselves, claims 1 and 15 of the '940

---

[2]As previously noted, claim 15 and claims depending from claim 15 are invalid. Nevertheless, the court will evaluate the manner in which claim terms are used in those claims to the extent that the court finds that instructive for purposes of construing claim terms as they are used in other claims in the '940 patent.

patent do not include any such limitation.   For example, claim 1 includes the limitation of "determining whether a user is authorized to add said record from said user authorization information."   *See* claim 1 of the '940 patent.  Similarly, claim 15 includes the following language "means for receiving user authorization information. . . . means for determining whether a user is authorized to add said record from said user authorization information. . . ."  *See* claim 15 of the '940 patent.  Neither claim 1 nor claim 15 limits the user authorization information to a password or user ID.

The court declines to adopt Plaintiff's proposed construction.   "User authorization information" means "user information upon which access is granted."

### 3.  "said information" (claims 1, 2, 5, 6, 16, 19, 20)

Plaintiff argues that this term means "information submitted by the user to be included in a record."   Defendant argues that there is no antecedent basis for this term and the court should invalidate the claim as indefinite.   The requirement of antecedent basis is a rule of patent drafting. The Manual of Patent Examining Procedure states that the failure to provide explicit antecedent basis does not always render a claim indefinite.   MPEP § 2173.05(e) (8th ed. Rev. 2 May 2004).   The Federal Circuit has held that "despite the absence of explicit antecedent basis, 'if the scope of a claim would be readily ascertainable by those skilled in the art, then the claim is not indefinite.'" *Energizer Holdings, Inc. and Eveready Battery Co., Inc. v. International Trade Commission,* 435 f.3d 1366, 1370-71 (Fed. Cir. 2006)(citing *Bose Corp. v JBL, Inc.,* 274 f.3d 1354, 1359 (Fed. Cir. 2001)).

Within the context of independent claims 1 and 15, "said information" is clearly understood to mean the information submitted by the user to be included in a record.  For example, in claim 1, the pertinent part states "said information to be included in said record responsive to said request"

19

while claim 15 states in relevant part "means for receiving said information to be included in said record responsive to said transmitting said request."  *See* claims 1 & 15 of the '940 patent. Accordingly, the court construes "said information" to mean "information submitted by the user to be included in a record."

### 4.  "storing an identification of said user" (claims 1 & 15)

Plaintiff argues that this term should be construed to mean that the "system stores a transaction ID" while Defendant proposes that it means "storing an identifier of a specific person." The language of claims 1 and 15 requires that the identification of the user will be used to determine whether the user is authorized to add a record in the database.  *See* claims 1 and 15 of the '940 patent.  Based on the specification, the transaction ID is different from the user ID.  For example, the specification provides that a unique transaction ID is assigned to each *entry. See, e.g.,* 6:24-28. The specification effectively defines or at least clearly distinguishes a user ID from a transaction ID in columns 7 and 8:

> Users providing the requested information are assigned a user ID to be used during subsequent accesses and are requested to choose a password. The password may be required to access some system services.  To further encourage voluntary login, users that have complied with the login request and have been assigned a user ID may be afforded the ability to customize the user interface and maintain the resulting look and feel between uses.  The customization is performed in a known manner by storing on the host a user preferences file and accessing the file to restore user preferences when a valid user ID is provided.

7:65-8:9.

The patent specification demonstrates that the transaction ID is tied to a particular database entry, while the user ID is tied to a particular user.  Plaintiff asks the court to construe this term such that the line between a user ID and a transaction ID is eliminated.  The court rejects Plaintiff's proposed construction.  The term "storing an identification of said user" means "storing an identifier

20

of a specific person."

## V.      Conclusion

The court adopts the constructions set forth in this opinion for the disputed terms of the '538 and the '940 patents.  The parties are ordered that they may not refer, directly or indirectly, to each other's claim construction positions in the presence of the jury.  Likewise, the parties are ordered to refrain from mentioning any portion of this opinion, other than the actual definitions adopted by the Court, in the presence of the jury.  Any reference to claim construction proceedings is limited to informing the jury of the definitions adopted by the Court.

SIGNED this 28th day of June, 2007.

_____

T. JOHN WARD
UNITED STATES DISTRICT JUDGE